SADIE I. GRIFFIN, APPELLANT, v. BENNETT CHRISWISSER, APPELLEE.

FILED APRIL 13, 1909.    No. 15,477.

1. Notes: DEFENSES: UNLAWFUL CONSIDERATION: EVIDENCE. In an action upon a note given for the benefit of a girl 15 years old, ostensibly to compromise bastardy proceedings instituted by her against the defendant's son, a defense that a written agreement was signed by her, in which she unlawfully contracted not to testify in a possible prosecution for statutory rape, is overcome by evidence that the plaintiff did not understand the meaning and effect of the written contract, but signed the same upon the assurance of the defendant's attorney that it settled nothing but the bastardy proceeding.

2. ——: ——: ——. The settlement of bastardy proceedings, brought by an infant pregnant with an illegitimate child, is a sufficient consideration for a promissory note; and it is no defense to such note that the mother and guardian of such infant made an unlawful agreement not to prosecute the putative father for statutory rape, unless such infant knowingly participated in such unlawful agreement.

APPEAL from the district court for Cass county: PAUL JESSEN, JUDGE. Reversed.

Matthew Gering, for appellant.

Byron Clark and W. C. Ramsey, contra.

CALKINS, C.

In the fall of 1903 the plaintiff, a girl but 15 years old and unmarried, was found to be with child, the result, as she alleged, of illicit intercourse with the defendant's son,

Ray Chriswisser, who disappeared from that vicinity about the time of the discovery of the girl's condition. The plaintiff's mother was appointed her guardian, and negotiations were had between her and the defendant for the settlement of the liability which had been incurred by his son. Both parties were in the end represented by attorneys, and a settlement was agreed upon December 19, 1903, by which the defendant was to pay plaintiff $1,500, $400 in cash, and $1,100 represented by a promissory note payable in three years from that date. The defendant alleges that his son was under the age of 18 years at the time of the alleged intercourse, and it does not appear whether there was ground for believing him to be old enough to have committed the offense of statutory rape; but the mother of the plaintiff on October 10, 1903, filed a complaint with the county judge charging him with that offense. A warrant was issued upon such complaint and placed in the hands of the sheriff, who returned the same, not served, on the 22d day of December, upon which date an order was entered dismissing the case. On the 19th day of December a proceeding in bastardy was instituted in the county court, the putative father appearing by his attorney, and the compromise was approved and the bond given to the county commissioners in pursuance of the statute. It appears to have been sufficiently understood by the parties that there could be no lawful settlement of the criminal charge; but a written contract was entered into which purported to settle the action for bastardy in consideration of the payment of said sum of $1,500 in the manner above provided; but it contained the stipulation that, if the said Ray Chriswisser should be prosecuted for the crime of statutory rape, and in said prosecution the said plaintiff or her mother should appear upon the witness stand and testify in aid of said prosecution, the said note should be canceled, etc. This, if it did not amount to the composition of a felony, is conceded to be an unlawful agreement to withhold evidence. The $400 was paid, and the defendant

paid the interest on the $1,100 note for two years. When the note became due, he refused to pay the principal, and this action was brought to recover the amount due thereon. The defense was that the consideration for the note was an agreement on the part of the plaintiff and her mother to suppress their evidence in any prosecution that might be had against the defendant's son for the crime of statutory rape. In reply to the defendant's answer, the plaintiff admitted that she signed the written contract in question, but alleged that she was, at the time of signing the same, but 15 years 8 months of age, and incapable of understanding the said contract, and that she relied upon the statement of those present, including the defendant and his attorney, that the said contract did not settle anything but the bastardy proceedings, which she had a right to compromise. There was a trial to a jury and evidence tending to support the contention of the respective parties, at the conclusion of which the court directed a verdict for the defendant, and from a judgment rendered upon this verdict the plaintiff appeals.

1. This is not a case where the entire consideration of the note sued upon was illegal. The settlement of the bastardy proceedings constituted a good and sufficient consideration, and the sole question is whether the insertion in the agreement of the unlawful stipulation not to criminally prosecute must prevent a recovery. That a party who has been in *pari delicto* cannot make his unlawful act the basis of a recovery has been held by this and many other courts. In such case the defense of illegality is said to be allowed, not as a favor, nor in the interest of either of the contracting parties, but in the interest of the public. *Lyon v. Waldo,* 36 Mich. 345; *Wooden v. Shotwell,* 23 N. J. Law, 465. But where the parties are not upon an equal footing, where one is free to act, and the other is the helpless victim, the former should not be allowed to take advantage of his own wrong and reap the benefits thereof. *Klein v. Pederson,* 65 Neb. 452, and cases there cited; *Rozell v. Van Syckle,* 11 Wash.

79. The disparity of the condition of the parties to this case respecting their freedom of action was great. The defendant could not have been apprehensive of a criminal prosecution against his son, for he testified that the boy was under 18 years of age. The most he had to fear for him was a proceeding against him under the bastardy statute. To the plaintiff's suffering from the physical distress of her approaching maternity was added the weight of social condemnation, which she might well apprehend would deprive her of friends and leave her doubly helpless. She was so young that she was presumed by law to be incapable of entering into a valid contract. The testimony in the record would justify a finding that she signed the paper upon the assurance of those present, including that of the defendant's attorney. and the defendant, that the same did not settle anything except the bastardy proceedings. It is doubtful if an infant who cannot make a valid contract can commit the offense of making one prohibited by law; but this question, not having been argued, we do not determine. It is enough to say that the infancy of the plaintiff and her unfortunate situation, may be taken into consideration with the other surrounding circumstances appearing in the case, in determining whether she was responsible in any degree for the insertion in the contract of the illegal provisions by virtue of which the defendant now seeks to escape his liability.

It is provided by section 341 of the code that, "when the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other understood it"; and we have recently held that a party to a contract, who signs the same upon the assurance of the other party that he understands the provisions of the contract to have a certain specified meaning, may, in case the contract cannot be so construed, have an action in equity to reform the same, so that it shall clearly express the meaning specified. *Blair v. Kingman Implement Co.,*

82 Neb. 344. The plaintiff had a right to make an agreement not to prosecute defendant's son under the bastardy act, and to accept in consideration for said promise a reasonable sum for the expenses of her lying in, and for the maintenance, care and nurture of her illegitimate child. It is not shown that the amount to be paid was more than adequate for that purpose. If she is denied relief in this action, it must be because she intended to agree not to criminally prosecute the defendant's son. If she had no such intention, and did not understand that the paper which she signed committed her to such agreement, she did not intentionally make a contract in violation of public policy, and did not, therefore, participate in the wrong.

2. It is suggested that the plaintiff was represented by her guardian and attorney, and that she must take the note in question charged with all the infirmities that would affect the same in the hands of her guardian. It must, however, be borne in mind that the authority of the guardian and the attorney to bind her was limited. They had no right to make any contract on her behalf which was illegal or void as being against public policy. It was their duty to secure for her payment for her lying in expenses, and provision for the sustenance of her child; but they had no right to make any agreement not to prosecute for the crime involved, if such crime in fact existed. If they, together with the defendant and his attorney, entered into an unlawful agreement, the defendant cannot set up such unlawful agreement against the plaintiff, unless she participated in the unlawful intent to do the thing prohibited.

It is argued that the plaintiff, by accepting the note, ratified whatever was unlawful in the conduct of her guardian and attorney, and that she therefore becomes in *pari delicto* with the defendant. An agent cannot bind his adult principal beyond the limits of his actual or apparent authority, and the acceptance of the benefits of a contract made for a valid consideration and apparently

lawful will not constitute a ratification of an unlawful condition made by the agent, of which the principal had no knowledge. If the unlawful agreement to withhold evidence in the criminal prosecution had been the sole consideration for the note, the plaintiff would have taken it subject to that defense; but here there was a lawful and valid consideration, and she is not chargeable with an unlawful agreement made by her agents without authority, unless she had notice of the same. It follows, in either view of the case, that the question of her knowledge and intention should have been submitted to the jury, and they should have been told that, if she did not understand nor comprehend that the agreement signed by her settled anything more than the bastardy proceedings, or if she, being in doubt as to the meaning of said contract, signed the same upon the assurance of her attorney and the attorney for the defendant, made in the presence of the defendant, that the contract did not mean the settlement of anything but the bastardy case, then she did not participate in the wrong, and the defendant could not allege his own illegal act against her.

We therefore recommend that the judgment of the district court be reversed and the cause remanded for a new trial.

DUFFIE and EPPERSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED.

ROOT, J., not sitting.